# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman SHELBY L. WILLIAMS
### United States Air Force

## ACM 38454

## 19 June 2015

Sentence adjudged 23 May 2013 by GCM convened at Keesler Air Force Base, Mississippi. Military Judge: Lynn Schmidt.

Approved Sentence: Bad-conduct discharge, confinement for 2 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis and Meghan Peters, Esquire.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, S.J., delivered the opinion of the court, in which Teller, J., joined. Allred, C.J., filed a dissenting opinion.

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his plea, of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920. He was sentenced to a bad-conduct discharge, confinement for 2 years, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, the appellant contends (1) the military judge abused her discretion in admitting certain evidence under Mil. R. Evid. 413, (2) the military judge erred to the prejudice of the appellant by admitting evidence of the victim's pregnancy and/or miscarriage without separately analyzing the admissibility of that evidence, (3) the evidence is legally and factually insufficient to sustain his conviction, (4) the military judge abused her discretion by refusing to admit a prior inconsistent statement of the alleged victim, and (5) trial counsel's sentencing argument was improper. We find the military judge erred in admitting certain evidence and set aside the appellant's conviction.

*Background*

The appellant met Senior Airman (SrA) SG in February 2010 via an online search engine that SrA SG had used to look for individuals in her location who shared her interest in anime, a form of Japanese animation. According to SrA SG, the appellant soon told her that he loved her, and the two began a relationship shortly thereafter. They married in June 2010. The forcible rape charge in this case stemmed from a 2 May 2010 sexual encounter between the two.

In April 2012, several months after the couple separated, SrA SG reported to the Air Force Office of Special Investigations that, among other allegations, the appellant had engaged in sexual intercourse with her multiple times in 2010 while she was asleep and without her consent. By the time of trial in May 2013, the two had a one-year-old child together but were in the midst of a contentious divorce and custody battle.

*Admission of Evidence under Mil. R. Evid. 413*

The military judge denied the government's request to present evidence under Mil. R. Evid. 404(b) that, on multiple occasions prior to and after the charged offense, the appellant had engaged in sexual intercourse with SrA SG while she was asleep and thus not consenting. The military judge found the members were likely to improperly use this as propensity evidence that the appellant had engaged in this activity in the past. After applying the balancing test of Mil. R. Evid. 403, she excluded the evidence.

After hearing the military judge's ruling, trial counsel asked to be further heard on the issue, and subsequently moved to admit evidence of only one such incident pursuant to Mil. R. Evid. 413(a), which states: "In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." Trial counsel described the incident as one where SrA SG "was sleeping, woke up the next morning, and later in the day found sperm in her underwear and ultimately determined that she was pregnant as a result of that. She doesn't remember the sexual encounter but, obviously, can put two and two together."

SrA SG had testified about this specific incident at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session held prior to the military judge's ruling. She stated she fell asleep in the appellant's apartment on 7 April 2010 after the two watched a movie. She awoke the next morning to find the appellant next to her in the bed. She got dressed and went to her dormitory room, changed clothes, and went to work. When she returned home after work, she noticed sperm in her underwear. She had no recollection of engaging in sexual intercourse the prior night and described herself as a heavy sleeper; she further testified that the appellant had worn a condom during all previous sexual encounters. SrA SG asked the appellant whether anything had happened the previous night, but he did not admit to engaging in sexual intercourse with her.[1] At her request, he purchased an emergency contraceptive medication designed to prevent pregnancy following an unprotected sexual encounter. SrA SG took the medication.

The government also elicited testimony during the motion hearing concerning SrA SG's subsequent pregnancy and miscarriage. SrA SG testified that several weeks later, she took a home pregnancy test that was positive, and that she believed this pregnancy resulted from the 7 April 2010 encounter. She later suffered a miscarriage and testified that her doctor told her the fetus was six weeks old when it died. She testified that the miscarriage did not occur until a month after the fetus died. Although she acknowledged that no medical determination had been made about why the fetus died, she testified that she had experienced sharp uterine pains and spotting after the charged assault on 2 May 2010, and that "the fetus could not live anymore" and died on approximately 21 May 2010 (six weeks after the 7 April 2010 assault). In support of its motion to admit evidence about the 7 April 2010 incident under Mil. R. Evid. 413, the government also provided the military judge with SrA SG's medical records from 16 and 21 June 2010, arguing SrA SG's testimony about the pregnancy and her medical records demonstrated the "strength of [the] proof" that the 7 April 2010 sexual assault occurred.

Over defense objection to any testimony by SrA SG about the 7 April 2010 incident, the military judge granted the government motion to admit that evidence to show the appellant had a propensity to commit sexual assault. In her ruling, she described the government's intended evidence as:

> [SrA SG] testified that in [sic] on or about 7 April 2010, while she was sleeping, the [appellant] had sex with her while she was asleep. She further testified that she had been with

[1] The government also presented testimony from another Airman who watched the movie with the couple that evening. According to this Airman, the appellant told him the next day that Senior Airman (SrA) SG had said she felt she had been raped, but he did not indicate when this had allegedly occurred. The Airman said the appellant denied raping her and stated that SrA SG had not told him to stop. In his testimony, the appellant testified that he had relayed this information to the Airman at a later time.

the [appellant] the night of the 7th, woke up late for work on the 8th, got dressed and later that day, she noticed sperm in her underwear. Based on this, she came to the conclusion that the [appellant] had had sex with her on the night of the 7th. She testified further that she was not actually aware of the sexual intercourse as she was asleep. According to documents presented during this motion, on or about 16 June 2010, [SrA SG] had a pre-natal follow-up appointment which would indicate that she was pregnant, though there were complications noted with the pregnancy and ultimately she miscarried.

The military judge granted the government's request to admit this evidence under Mil. R. Evid. 413. She first found the 7 April 2010 sexual encounter met the threshold requirements for admissibility, stating "the probative value of the uncharged conduct in this case substantially outweighs any danger of unfair prejudice and confusion of the issues" under Mil. R. Evid. 403.[2]

Following that ruling, SrA SG testified before the members. She described falling asleep after watching a movie, finding dried sperm in her underwear, and fearing she could become pregnant. She did not recall any sexual contact with the appellant during the night in question. Because she did not wake up, SrA SG testified that she assumed the appellant had sexual intercourse with her while she was asleep but did not apply sufficient pressure to her to wake her up. She also testified about taking the emergency birth control before discovering she was pregnant.

In describing the charged incident, SrA SG testified that she fell asleep in the appellant's bed in his dormitory room and awoke to the feeling of a "huge weight" pinning her to the bed on her stomach. She testified the appellant was "slamming" and "forcing" his penis into her vagina while his arms and legs were on top of hers. She told him to stop and that he was hurting her, but "he was not comprehending what [she] was saying." SrA SG testified that after about five minutes, she changed her words to: "Stop, you're hurting my arms." At this, the appellant reacted by removing his arms, and she was then able to push him off. SrA SG stated she "felt like [her] uterus was going to fall out" after this incident.

SrA SG also testified about the manner in which her pregnancy ended in greater detail than she testified in the Article 39(a), UCMJ, session. She described having persistent sharp pains in her uterine area immediately after this 2 May 2010 incident as well as bleeding, which continued "until the sixth week of the pregnancy," at which time

---

[2] Mil. R. Evid. 403 states relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues."

she claimed the fetus died. She testified that the fetus died around 21 May 2010, but she did not miscarry until 21 June 2010. She described the appearance of the miscarried fetus in graphic terms during her testimony and stated she was "devastated" and emotionally "very, very dead inside" afterward.

*Analysis*

As noted above, the military judge's Mil. R. Evid. 413 ruling authorized trial counsel to elicit testimony from SrA SG about the 7 April 2010 incident, the pregnancy that allegedly resulted from that assault, and the subsequent miscarriage of the fetus. We first address whether the military judge erred in how she addressed each of those subjects as part of her ruling.

Mil. R. Evid. 413(a) allows evidence of an uncharged sexual assault to be admitted and "be considered for its bearing on any matter to which it is relevant." This includes demonstrating an accused's propensity to commit the charged offenses. *See United States v. Parker*, 59 M.J. 195, 198 (C.A.A.F. 2003); *United States v. Wright*, 53 M.J. 476, 480 (C.A.A.F. 2000). Our superior court has noted that "inherent in Mil. R. Evid. 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 94–95 (C.A.A.F. 2005). Certain procedural safeguards are required in order to protect the accused from an unconstitutional application of Mil. R. Evid. 413. *See United States v. Schroder*, 65 M.J. 49, 55 (C.A.A.F. 2007). This includes the requirement that the military judge make "threshold findings" that (1) the accused is charged with sexual assault; (2) the proffered evidence is evidence of his commission of another offense of sexual assault; and (3) the evidence is relevant under Mil. R. Evid. 401 and 402. *See id.*; *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013).

Once these threshold findings are made, the military judge is constitutionally required to apply a balancing test under Mil. R. Evid. 403. *Berry*, 61 M.J. at 95. Mil. R. Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Although a general presumption of admissibility is inherent in Mil. R. Evid. 413, the Constitution requires that such evidence be subjected to a "thorough" and "careful" balancing test due to the potential for undue prejudice that is inevitably present when dealing with propensity evidence. *Solomon*, 72 M.J. at 181. "Where that balancing test requires exclusion of the evidence, the presumption of admissibility is overcome." *Id.* (quoting *Berry*, 61 M.J. at 95 (internal quotation marks omitted). In conducting the balancing test for Mil. R. Evid. 413 evidence, our superior court has been instructive:

> [T]he military judge should consider the following non-exhaustive [*Wright*] factors to determine whether the

evidence's probative value is substantially outweighed by the danger of unfair prejudice: strength of proof of the prior act . . .; probative weight of the evidence; potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and the relationship between the parties.

*Solomon*, 72 M.J. at 180. Our superior court has found error when a military judge's balancing under Mil. R. Evid. 403 fails to discuss and reconcile evidence that greatly reduces the strength of the proof of the prior act. *Id.* at 181.

We review a military judge's decision to admit evidence pursuant to Mil. R. Evid. 413 for an abuse of discretion, including her decision that it meets the threshold requirements for such evidence and her balancing test under Mil. R. Evid. 403. *See Solomon*, 72 M.J. at 179; *Berry*, 61 M.J. at 95. During the motion hearing, the government elicited testimony from SrA SG about the pregnancy and miscarriage as part of its proposed Mil. R. Evid. 413 evidence. The military judge's subsequent ruling authorized the admission of evidence of the 7 April 2010 incident, the pregnancy that allegedly resulted from that assault, and the June 2010 miscarriage, all under the auspices of Mil. R. Evid. 413. The military judge's ruling focused, however, on the admissibility of SrA SG's testimony about the April 2010 incident itself. The military judge found the three threshold requirements were met for the admission of the April 2010 incident under Mil. R. Evid. 413. She also analyzed the *Wright* factors relative to the incident and concluded the probative value of this evidence substantially outweighed any danger of unfair prejudice and confusion of the issues in the case.

Because the military judge did not discuss how evidence regarding the pregnancy or miscarriage was admissible (as part of the government's Mil. R. Evid. 413 evidence or otherwise) or how the balancing test of Mil. R. Evid. 403 applied to that evidence, we are left without an understanding of the military judge's decision-making process and must give that aspect of her decision less deference. *See United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014). Similarly, when factual issues are involved in the litigation of a motion, a military judge "has a mandatory sua sponte duty to state the essential findings on the record which support his or her ruling." *Id.* (quoting *United States v. Doucet*, 43 M.J. 656, 659 (N.M. Ct. Crim. App. 1995)) (internal quotation marks omitted). It is very difficult for an appellate court to determine the facts relied upon, whether the appropriate legal standards were applied or misapplied, and whether the decision amounts to an abuse of discretion or legal error without a proper statement of essential findings. *See id.*; *United States v. Acton*, 38 M.J. 330, 334 (C.M.A. 1993) (holding a military judge is not required to make special findings, but "it is difficult to defer to a decision when the record does not reflect what the basis of the decision was"). Accordingly, we give less deference to a military judge who fails to place sufficient evidence on the record to

demonstrate that she acted within the bounds of her discretion when admitting evidence. *See id.* at 317.

Given the unique facts of this case, the military judge had a duty to separately consider, evaluate, and discuss the admissibility of the pregnancy and the miscarriage. *Cf. United States v. Diaz*, 59 M.J. 79, 94 (C.A.A.F. 2003) (holding that each alleged incident of uncharged misconduct must meet the admissibility test and the prosecution "cannot merely lump together a series of incidents and assert that together they establish [the accused] committed each act of abuse."). Her admission of that evidence without factual findings or analysis results in that decision being given considerably less deference. When considered within the totality of the evidence presented at trial, it was error for the military judge to allow the admission of evidence about the pregnancy and miscarriage as part of the Mil. R. Evid. 413 evidence.[3]

To be admissible, evidence must be logically relevant to a fact of consequence in the case by making that fact "more probable or less probable." *United States v. Staton*, 69 M.J. 228, 230–31 (C.A.A.F. 2010); *see also* Mil. R. Evid. 401. There are two components to relevancy: "(1) probative value, the relationship between the evidence and the proposition it is offered to prove; and (2) materiality, the relationship between the proposition the evidence is offered to prove and the facts at issue in the case." *United States v. James*, 63 M.J. 217, 221 (C.A.A.F. 2006). Although the relevance standard is a low one, there must be "a real and direct nexus" between the proffered evidence and a fact or issue in the case. *United States v. Sullivan*, 70 M.J. 110, 115 (C.A.A.F. 2011). In her Mil. R. Evid. 413 ruling, the military judge simply found that the government's "proffered evidence meets the low threshold of relevance and is admissible."

Having reviewed the medical records considered by the military judge prior to her ruling about this evidence, we find that those records do not facially match SrA SG's claim that she became pregnant through the 7 April 2010 encounter despite having promptly taken an emergency contraceptive designed to reduce the risk of pregnancy. The medical records from her appointment on 16 June 2010 indicated that SrA SG had

---

[3] We did not apply plain error to the admission of the pregnancy and miscarriage evidence as we find the defense's objection to any evidence relating to the 7 April 2010 incident sufficient to constitute an objection to those aspects of the government's planned evidence. Regardless, we would also find plain error if we analyzed this situation under that standard.

> When the defense fails to object to admission of specific evidence, the issue is waived, absent plain error. The plain error standard is met when an appellant establishes that (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights.

*United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (citations and internal quotation marks omitted). As described above, the military judge's admission of this evidence was error that was plain, clear and obvious, and this error resulted in material prejudice to the appellant's substantial rights.

experienced light bleeding since her last appointment six days earlier on 10 June 2010. Bloodwork from the 16 June 2010 appointment revealed a significant drop in the amount of pregnancy hormone since that last appointment, while an ultrasound revealed the fetus had not grown during that time and now had no heartbeat. Based on these test results, the doctor concluded the fetus had died and, based on its size as of 16 June 2010, that it was at a gestational size of approximately six weeks.[4] These conclusions indicate conception would have occurred at least several weeks after the 7 April 2010 incident and are also inconsistent with SrA SG's claim that the fetus died a month before the 21 June 2010 miscarriage. The records also do not support SrA SG's testimony that her pregnancy complications began the day of the charged assault.

Once factually untethered from the 7 April 2010 incident, the evidence of pregnancy would not have been logically relevant to whether sexual intercourse occurred on that occasion, the purpose for which the government offered and used it, and its corroborative effect on SrA SG's testimony would have been eliminated. Similarly, given that the miscarriage is not factually linked to the charged rape, it would not be logically relevant to the panel's determination of whether that rape occurred nor is it a circumstance related to that assault.

To the extent this evidence, when unlinked from the two sexual assaults, has some logical relevance to the overall state of the couple's relationship, we find it is not legally relevant in accordance with the Mil. R. Evid. 403 balancing test. *See United States v. Barnett*, 63 M.J. 388, 395 (C.A.A.F. 2006) (holding that the proper application of the balancing test ensures the evidence is legally relevant). Mil. R. Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In determining unfair prejudice, we look to the risk that the evidence in question, despite its probative value, might be used improperly or, in other words, whether "some concededly relevant evidence [might] lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Collier*, 67 M.J. 347, 354 (C.A.A.F. 2009) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)) (internal quotation marks and emphasis omitted); *United States v. Stephens*, 67 M.J. 233, 236 (C.A.A.F. 2009) ("The overriding concern of M.R.E. 403 is that evidence will be used in a way that distorts rather than aids accurate fact finding." (citation and internal quotation marks omitted)). Mil. R. Evid. 403 "addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." *Collier*, 67 M.J. at 354. This potential for unfair prejudice must

---

[4] The medical records also indicate that SrA SG was given several options by the medical staff to address the medical situation. Five days later, on 21 June 2010, she returned and reported that she had experienced significant cramping and had passed blood and tissue the day before. The medical staff concluded she had spontaneously aborted the remains of the fetus.

substantially outweigh the probative value of the evidence. In conducting a review in this context, our superior court has cautioned against speculating about prejudicial impact that is unrelated to any specific findings of the military judge. *Id.* at 354–55.

We find a substantial danger of unfair prejudice from the introduction of evidence about the pregnancy and miscarriage. The government used the pregnancy to bolster the credibility of SrA SG's claim that sexual intercourse occurred on 7 April 2010 and to corroborate her testimony about that incident. That incident then served as proof that the appellant had a propensity to engage in sexual intercourse with SrA SG while she was asleep, which, in turn, served as proof that the appellant committed the charged rape. Similarly, SrA SG essentially testified that the charged rape caused her to miscarry when she said that the violent penetration caused her to feel as if her uterus was "going to fall out," that she immediately began having persistent sharp pains in that area, and that she experienced vaginal bleeding for six weeks until the fetus died. In sum, the admission of the pregnancy and miscarriage evidence and their connection to the two assaults subjected the appellant to tremendous prejudice as that evidence essentially (and incorrectly) was used to prove that those two incidents occurred. This leads to the likelihood that the panel was lured by this evidence into finding the appellant guilty on a basis different than the actual substantive evidence presented by the government about the 2 May 2010 incident itself. Furthermore, SrA SG's graphic description of the appearance of her miscarried fetus was highly inflammatory and was likely to provoke an emotional response in the panel or otherwise tend to adversely affect the panel's attitude towards the appellant such that they would find him guilty on a basis other than proof of the actual crime.

Additionally, we also find there was a significant risk that the introduction of this evidence had a strong tendency to confuse and mislead the panel. The admission of the testimony about the pregnancy and miscarriage "resulted in a classic example of a 'distracting mini-trial'" on these events. *See Solomon*, 72 M.J. at 181 (quoting *Berry*, 61 M.J. at 97). Although the military judge did instruct the panel on the permissible uses of the April 2010 incident, no similar instruction was provided regarding the pregnancy and miscarriage evidence.[5] This allowed the introduction of the evidence to improperly

---

[5] The panel was instructed:

> You heard evidence that the accused may have committed another offense of sexual assault on or about 7 April 2010. The accused is not charged with this or any other offense. This evidence may have no bearing on your deliberations unless you first determine by a preponderance of the evidence this other uncharged offense occurred. If you determine by a preponderance of the evidence this other uncharged offense occurred, you may then consider the evidence of that offense for its bearing on any matter to which it is relevant only in relation to the offense of which the accused is charged. You may consider the evidence of such other act of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault. You may not, however, convict the accused solely because you believe he committed this

"devolve[] into exactly the sort of sidetracking of the factfinder that should be avoided." *Solomon*, 72 M.J. at 182. This is especially problematic given the lack of an adequate factual link between this evidence and the allegations the appellant sexually assaulted SrA SG on the two occasions.

At trial, military judges are often compelled to conduct Mil. R. Evid. 403 balancing based upon representations by counsel and testimony during motion hearings that may or may not accurately reflect how the evidence is ultimately presented to the members. In this case, the military judge, after a hearing, conducted a balancing test under Mil. R. Evid. 403, which is set out in her written ruling. With regard to the potential for distraction of the fact-finder, she ruled "the Court does not see this evidence as a distraction as it is one small piece of a clearly tumultuous relationship with on again / off again sexual relations...additionally, the Court intends to give a limiting instruction as to how this evidence may be used in [the members'] deliberations." With regard to the time needed to present proof of the 7 April 2010 incident, she ruled, "SrA [SG] will already be testifying during the trial and a few questions on this issue will not take up an extraordinary amount of time." Appellate courts, in reviewing such determinations, have the benefit of weighing any potential distraction based upon the way the trial actually unfolded. *See United States v. Bailey*, 55 M.J. 38, 41 (C.A.A.F. 2001) (noting, in sustaining the military judge's Mil. R. Evid. 403 balancing, that the judge "kept the witness' testimony abbreviated and focused"); *Berry*, 61 M.J. at 97 (citing trial counsel's opening and closing arguments in conducting its own Mil. R. Evid. 403 balancing concerning the possible distraction of the factfinder); *Solomon*, 72 M.J. at 181–82 (C.A.A.F. 2013) (overturning military judge's assessment of the *Wright* factors in light of trial counsel's opening and closing statement, as well as the testimony before the members). As in *Berry* and *Solomon*, the testimony in this case may have unfolded differently than the judge anticipated and accounted for in her analysis of the *Wright* factors. As in those cases, the military judge here failed to take actions during trial to limit the improperly prejudicial effect of SrA SG's testimony about these events, even if that evidence was factually linked to the two sexual assaults.

In sum, any arguable probative value of this evidence is minimal and is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the members as described above, especially when coupled with the lack of instruction about how the panel was authorized to use this evidence during its deliberations. *See United States v. Walker*, 42 M.J. 67, 74 (C.A.A.F. 1995) (recognizing that a military judge's instructions to members on the proper use of testimony could have resolved Mil. R. Evid. 403 issues).

---

other offense or solely because you believe the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist. The accused may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt.

Having found error, we must now assess prejudice. "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a). The test for nonconstitutional evidentiary error, including where a military judge abuses her discretion in admitting evidence under Mil. R. Evid. 413 or in applying the Mil. R. Evid. 403 balancing analysis, is whether the error had a "substantial influence on the findings." *Berry*, 61 M.J. at 97 (citation and internal quotation marks omitted); *see also Flesher*, 73 M.J. at 317–18; *United States v. Yammine*, 69 M.J. 70, 76–78 (C.A.A.F. 2010). We review that question de novo. *Yammine*, 69 M.J. at 78. The government bears the burden of demonstrating that the admission of erroneous evidence is harmless. *See Flesher*, 73 M.J. at 318.

Our consideration of this issue "cannot be merely whether there was enough [evidence] to support the result" aside from the erroneous admission of evidence. *United States v. Clark*, 62 M.J. 195, 200 (C.A.A.F. 2005) (internal quotation marks omitted). Instead, we must evaluate whether the error itself had a substantial influence on the members' verdict in the context of the entire case. *Id.*; *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007). To determine whether the government has carried its burden, we use a four-part test, weighing: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* at 201–02 (internal quotation marks omitted). Where we conclude the error substantially influenced the findings or if we are "left in grave doubt" whether the findings were so influenced, we must reverse. *United States v. Pablo*, 53 M.J. 356, 359 (C.A.A.F. 2000) (citation and internal quotation marks omitted).

Although these are four distinct factors, they all revolve in this case around one single point—whether the appellant initiated sexual intercourse with SrA SG on 2 May 2010 while she was asleep, and then forcibly continued with that act despite her protests. *See Flesher*, 73 M.J. at 318. The government's evidence consisted primarily of SrA SG's testimony about that incident, as well as the earlier instance where the appellant engaged in sexual intercourse with her while she was asleep. In contrast, the defense put the appellant on the stand where he denied her version of events and contended that both sexual encounters were consensual. The result was a "he said-she said" case where the outcome largely depended on which witness the panel found more credible. *See id.*; *see also United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (noting one of Congress's expressed rationales for Federal Rule of Evidence 413 is the need for corroborating evidence when an alleged rapist claims the victim consented, that there are no witnesses other than the defendant and the alleged victim, and "this evidence has undeniable value in bolstering the credibility of the victim"). In such a case, "anything bolstering the credibility of one party inherently attacks the credibility of the

other" and thus the danger that improperly admitted evidence will improperly bolster a witness's testimony is significant. *Id.* at 317.

Under this scenario, we find that SrA SG's testimony about her pregnancy and miscarriage "could have been of considerable significance in the minds of the panel members because it seemed to corroborate and ratify [SrA SG's] version of events." *Id.* at 318. SrA SG's credibility was the central issue in this case, and the defense vigorously attacked her credibility on several grounds.[6] The government's case rested almost entirely on SrA SG and her testimony, which had significant weaknesses. In fact, trial counsel conceded in his rebuttal argument that the panel could have reasonable doubt if they had to rely solely on SrA SG, and almost immediately reminded the panel about the evidence of the uncharged sexual assault as showing the appellant's predisposition to assault her.

Within the context of the entire case, evidence of the pregnancy and miscarriage, by reinforcing and bolstering SrA SG's credibility about whether the two incidents occurred, was qualitatively significant and material to the government's overall weak case.[7] *See Solomon*, 72 M.J. at 183; *United States v. Cook*, 48 M.J. 236, 240 (C.A.A.F. 1998) (finding erroneous admission of evidence was not harmless where the evidence of a sexual assault came solely from the alleged victim and where her testimony was vigorously attacked). The government's case was significantly strengthened by the improperly admitted evidence. *See Yammine*, 69 M.J. at 78. Based on our review of the record, we find this evidence "improperly tipped the balance of the evidence" in favor of the government. *See Berry*, 61 M.J. at 98; *United States v. Moss*, 63 M.J. 233, 239 (C.A.A.F. 2006) (finding error where the military judge's admissibility decision may have affected the members' role in determining whether a victim's testimony is credible and what weight to give her testimony). We are "left in grave doubt" whether the pregnancy and miscarriage evidence "unduly weighted the scales of justice against [the] appellant." *See United States v. Walker*, 57 M.J. 174, 178 (C.A.A.F. 2002). Therefore, after considering each of the four factors and given all the circumstances of this particular case, we find the government has failed to demonstrate the error did not have a substantial influence on the findings in this case. Under those circumstances, the admission of this evidence materially prejudiced the appellant's substantial rights. *See Yammine*, 69 M.J. at 79.

---

[6] Four members of SrA SG's chain of command testified that she is an untruthful person.

[7] We recognize that evidence adduced at trial included a short portion of a two hour pretext phone call in May 2012 between the appellant and SrA SG where he eventually responded "yes" when she asked if he was sorry for "raping" her. When considered in light of the entire record (to include the appellant's testimony that he was attempting to placate SrA SG so he could be present for the upcoming birth of their child), the existence of this statement does not change our conclusions that this case turns on the relative credibility of SrA SG and the appellant and that the pregnancy/miscarriage evidence improperly tipped the credibility balance in the government's favor. Following that phone call, the appellant moved back in with SrA SG and was present for the birth of their child.

Because we decide this issue in the appellant's favor and reverse, we need not reach the other issues he raised in his appeal.[8, 9]

*Conclusion*

The findings of guilty and the sentence are set aside. A rehearing is authorized.

ALLRED, C.J., dissenting.

I agree with my esteemed colleagues in the majority that, pursuant to Mil. R. Evid. 413, the military judge properly admitted evidence of the alleged 7 April 2010 sexual assault. I disagree with their conclusion that the trial judge erred in failing to exclude evidence of the victim's pregnancy and miscarriage.

Trial defense counsel never objected to the evidence my colleagues find repugnant.[10] The victim's apparent pregnancy and miscarriage were deeply woven into the litigation of this case and were relevant to the charged offense. They had much to do with her supposedly inconsistent behavior in remaining with her abuser, with the injuries resulting from her violent rape, and with other pertinent issues advanced by both the government and the defense. The evidence was in some measure graphic and emotional, but so too is much of the evidence widely and properly admitted in modern sex assault trials. In my view, the judge had no duty to exclude this evidence sua sponte and, if any error did occur, it did not amount to plain error. *See United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) ("When the defense fails to object to admission of *specific* evidence, the issue is waived, absent plain error.") (emphasis added).

---

[8] We note, however, that one of these issues related to the military judge's refusal to admit a printout from a blog written by SrA SG about the course of her relationship with the appellant. After SrA SG was cross-examined about statements in the blog that were inconsistent with her testimony, one of the panel members asked to review the entire blog and her Article 32, UCMJ, 10 U.S.C. § 832, testimony, indicating he was interested in issues related to her credibility.

[9] Though not raised as an issue on appeal, we note that the overall delay of more than 18 months between the time of docketing and review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, we find that the appellate delay in this case was harmless beyond a reasonable doubt. *Id.* at 135-36 (reviewing claims of post-trial and appellate delay using the four-factor analysis found in *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). *See also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006); *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

[10] The majority's conclusions that "the defense's objection to any evidence relating to the 7 April 2010 incident [is] sufficient to constitute an objection to those aspects of the government's planned evidence" is a stretch with which I cannot agree.

Therefore, I respectfully dissent.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court