UNITED STATES, Appellee,

v.

Glen F. ACTON, Staff Sergeant
U.S. Air Force, Appellant.

No. 67,886.

CMR No. 28441.

U.S. Court of Military Appeals.

Argued June 2, 1993.

Decided Sept. 29, 1993.

Certiorari Denied Feb. 22, 1994.

See 114 S.Ct. 1056.

For Appellant: *Major George F. May* (argued); *Roger Besu* and *Lieutenant*

Colonel Frank J. Spinner (on brief); Colonel Terry J. Woodhouse, Major Marilyn A. Gordon, Major Alice M. Kottmyer, Major Mary C. Yastishock.

For Appellee: Captain Carlos L. McDade (argued); Colonel Richard L. Purdon and Colonel Jeffery T. Infelise (on brief); Major Paul H. Blackwell, Jr.

### Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, pursuant to his pleas, of presenting a false claim, in violation of Article 132, Uniform Code of Military Justice, 10 USC § 932. The court-martial also convicted appellant, contrary to his pleas, of committing an indecent act with his 12–year–old daughter by sucking her breast and inserting his finger into her vagina, in violation of Article 134, UCMJ, 10 USC § 934. The court-martial sentenced appellant to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. Because of an error during the sentencing proceedings, the convening authority ordered a sentencing rehearing, at which appellant, represented by a new defense counsel, received the same sentence as before. The convening authority approved that sentence on March 16, 1990.

The Court of Military Review remanded the case for further factfinding on the question whether appellant's first defense counsel had been properly released from representing appellant at the sentence rehearing. 33 MJ 536. On further review, the Court of Military Review held that appellant had consented to the withdrawal of his first defense counsel and affirmed the findings and sentence in an unpublished opinion dated December 31, 1991.

We granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED, TO·THE SUBSTANTIAL PREJUDICE OF APPELLANT, WHEN SHE ADMITTED, PURSUANT TO MIL. R.EVID. 404(b), EVIDENCE THAT APPELLANT HAD SHOWERED WITH HIS CHILDREN AND SHOWN THEM SEXUALLY EXPLICIT VIDEO TAPES.

### II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT DECIDED THAT APPELLANT CONSENTED TO THE WITHDRAWAL OF CAPTAIN BARTLEMAY AS HIS DETAILED DEFENSE COUNSEL.

#### I. Evidence of Showering and Pornographic Videotapes

##### A. Factual Background

Prior to entering his pleas, appellant made a motion in limine to exclude any evidence that he showered with his son and daughter or showed them pornographic movies. Trial counsel argued that the evidence was admissible "to show a common scheme, intent, or plan ... to molest his daughter"; that the showering and pornographic movies were "foreplay" to the indecent act; and that appellant "was conditioning the child to have sexual activity with him." The military judge asked counsel if they believed the evidence was admissible as "res gestae" or "a continuing course of conduct." Defense counsel answered in the negative and trial counsel had no comment.

After an overnight recess during which the military judge stated that she would read United States v. Mann, 26 MJ 1 (CMA), cert. denied, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988), which involved a charge of indecent acts by a father with his daughter and admissibility of magazines depicting father-daughter sexual conduct, the military judge in the instant case ruled that the evidence would be admitted to show "a continuous course of conduct" and to prove "plan" and "intent."

Trial counsel intended to show only about 15 minutes of the video, but defense counsel argued that, if the video was to be

shown at all in spite of the defense objection, then more should be shown "to depict an accurate presentation of what was shown, rather than just concentrate on the one involving incest. . . ." The military judge requested counsel to attempt to reach an agreement on how much of the video should be shown. Eventually, counsel agreed on a 24–minute extract of the video.

The prosecution's case consisted of the testimony of appellant's daughter (the victim), appellant's son, and a civilian police detective who obtained a confession from appellant. The daughter testified that she, her brother, and her father had watched the video depicting incest four or five times. On the night in question, they watched the video; then took a shower together. Appellant's son asked appellant if they could sleep in appellant's bedroom where it was warmer. The three slept in the same bed, with appellant in the middle. At about two o'clock in the morning appellant whispered his daughter's name several times and asked her, "Do you want to feel good?" She responded, "I don't know." Appellant then "started sucking" her breast and "using his fingers in" her vagina. She said, "Stop, because I have to go to the bathroom." After both appellant and the daughter used the bathroom, appellant asked his daughter if she wanted to do it again, and she responded, "No" and went to sleep.

Appellant's son, who was 11 years old at the time, corroborated his sister's description of the showers and pornographic movies.

In his confession to the civilian police detective, appellant admitted asking his daughter "if she wanted to feel good." He admitted sucking her breast and inserting his finger in her vagina. He stated, "I don't remember exactly what I said but it was something about orgasm." He admitted that he began showering with his children and showing them pornographic movies about a month before the charged offense. The last paragraph of his confession recites, "I don't see my daughter in a

sexual way and I just wanted to educate my children."

A 24–minute extract of the pornographic video was shown to the members, depicting father-daughter sexual intercourse, brother-sister intercourse, and a closing scene in which the "mother" enters the room while father and daughter are engaged in sexual intercourse. The "mother" kisses the "father," while he continues to have intercourse with the "daughter," after which both "mother" and "daughter" perform fellatio on the "father."

The defense consisted of an attack on the daughter's credibility and an attack on the reliability of appellant's confession. The defense introduced evidence that the daughter was untruthful and sexually promiscuous. Regarding the confession, the defense asserted that the confession was an inaccurate and untruthful statement made by an "emotionally distraught" and confused appellant. Appellant did not testify.

In her instructions on findings, the military judge included the following:

Evidence that the accused showered with his children and showed them the video tape that was viewed in court may be considered by you for the limited purpose of its tendency, if any, to explain the circumstances surrounding the offense and the tendency, if any, to prove the intent of the accused to arouse his sexual desires. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offense charged.

Neither counsel objected to the instructions or requested additional instructions.

### B. *Discussion*

Appellant contends that the military judge erred by admitting evidence that appellant showered with his daughter and son and showed them pornographic videos. The question on appellate review is whether the military judge abused her discretion by admitting the evidence in question.

*United States v. Spata*, 34 MJ 284, 286 (CMA 1992). We hold that she did not.

Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1984, provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The categories of admissible evidence listed in Mil.R.Evid. 404(b) are illustrative; it is not necessary that "evidence fit snugly into a pigeon hole provided by Mil.R.Evid. 404(b)." The test is "whether the evidence ... is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo*, 29 MJ 145, 150 (CMA 1989).

In *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989), we set out a three-part test for determining admissibility of "404(b)" evidence:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence?
3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"?

(Citations omitted.)

The first prong is founded on Mil.R.Evid. 104(b), dealing with relevance conditioned on a fact. The threshold for this prong of admissibility is low. *See United States v. Dorsey*, 38 MJ 244, 246 (CMA 1993). As the Supreme Court explained in *Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 501, 99 L.Ed.2d 771 (1988):

In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.

This prong was clearly established in this case. Appellant's daughter and son both testified that appellant took showers with them and showed them pornographic videos. Appellant's own confession admitted the acts.

The second prong—determining the "fact ... of consequence" made "more" or "less probable," *i.e.*, relevance, is the heart of the controversy here. The defense in this case was mixed. Although they presented no direct evidence on the merits, they attacked the credibility of the government witnesses and asserted in argument that the offenses did not occur. They did not attack admissibility of appellant's confession but asserted that it was an unreliable statement made by an emotionally distraught and confused suspect. Finally, within the four corners of the confession appellant admitted showering with his children and showing them pornographic videos, but he asserted that his sole motivation was educational and disclaimed any sexual interest in his daughter.

Given this posture of the evidence, we hold that the evidence satisfied the second prong because it was relevant to prove appellant's plan or scheme to condition his daughter to accept his sexual advances as permissible and normal. *See United States v. Palmer*, 29 MJ 929, 938 n. 5 (AFCMR 1989) (evidence of pornographic movies relevant to show appellant's effort to "brainwash" victim into accepting sexual abuse), *aff'd*, 33 MJ 7 (CMA 1991). It also was relevant to prove appellant's intent to satisfy his sexual desires, because it refuted appellant's assertion in his confession that his intent was innocent and that he had no sexual interest in his daughter. *See United States v. Mann*, 26 MJ at 4 (evi-

dence of pornographic materials admitted when accused denied acts occurred and also asserted innocent bathing and tickling).

The third prong incorporates the balancing test of Mil.R. Evid. 403. In appellant's case the probative value of the evidence was high on the issues of plan and intent. Appellant's conduct was close in time to the charged offense, the last incident taking place on the evening before the charged offense occurred shortly after that midnight. Any prejudicial impact based on the shocking nature of the evidence was diminished by the fact the same conduct was already before the court members, having been described in appellant's confession which was received in evidence without defense objection. Trial counsel presented only enough of the video to establish that it portrayed incest as normal. The additional portions of the pornographic video were played at the request of the defense.

■ Appellant argues that we should give minimal deference to the judge in this case because she did not articulate her application of the Mil.R.Evid. 403 balancing test on the record. It is certainly preferable in most cases for the military judge to articulate findings on the record so that we can determine how Mil.R.Evid. 403 was applied. Obviously, it is difficult to defer to a decision when the record does not reflect what the basis of the decision was. Nevertheless, although we have encouraged military judges to make special findings which articulate the rationale for their rulings, we have not required them to do so. *See United States v. Palmer, supra.*

In any event, it is not difficult to discern the basis of the military judge's ruling in this case. Trial counsel offered the evidence on multiple theories: that it showed "common scheme, intent, or plan ... to molest his daughter"; that it was "foreplay"; and that appellant "was condition-

ing the child to have sexual activity with him." The military judge queried counsel for both sides about "res gestae" and "continuing course of conduct." 38 MJ at 331. After recessing overnight to study *United States v. Mann, supra,* which also involved sexual misconduct with a child, a general denial, and an asserted innocent intent, the military judge admitted the evidence as relevant to "a continuous course of conduct," "plan," and "intent." [1] Since the military judge expressly relied on *Mann,* which applied the Mil.R.Evid. 403 balancing test, we are satisfied that she exercised her discretion in accordance with the legal principles set out in *Mann.* Accordingly, we hold that the military judge did not abuse her discretion in admitting this evidence.

■ We have also noted that the trial of this case preceded our recommendation in *United States v. Franklin,* 35 MJ 311, 317 (CMA 1992), to "wait until both parties present evidence on the merits" to determine whether intent is contested. Our guidance in *Franklin* was prophylactic, designed to avoid premature admission of evidence which later turns out to have little probative value but high prejudicial impact. *See* Mil.R.Evid. 403. In appellant's case, however, the military judge's failure to defer her ruling was harmless for two reasons: First, the evidence ultimately raised the issue of intent. Second, the evidence was clearly admissible to prove appellant's plan to condition his daughter to accept sexual abuse.

## II. *Improper Withdrawal of Defense Counsel*

### A. *Factual Background*

Appellant was convicted and sentenced on July 15, 1989. On July 20, 1989, appellant wrote a letter to his defense counsel, Captain Bartlemay, asking him to "petition for a Deferment of" confinement and "a new trial." Appellant then wrote:

---

1. As Senior Judge Everett correctly notes, the suggestion that appellant and his children sleep in the same bed on the night in question came from appellant's son, not from appellant. This evidence is not "totally at odds" with the mili-

tary judge's theory of admissibility. Appellant's "course of conduct" and "plan" were to take liberties with his daughter whenever the opportunity presented itself. The child's request presented such an opportunity.

I feel I was not defended to the utmost of your ability, by not bringing pertinent evidence out. Also the legal issues here severly [sic] hindered your putting on a proper defense. If you feel you cannot or don't want to defend me again, I would very much appreciate you finding a good lawyer that can give me a good defense.

On the following day Captain Bartlemay responded to appellant as follows:

Based on the concerns you expressed about the defense provided at trial and that you do not believe I did my best, I am withdrawing from further representation in post-trial matters. I have obtained the services of Captain Floyd Russel [sic] to represent you in all pot [sic] trial matters including the submission of clemency materials to the Convening Authority.

Captain Russell thereafter performed all post-trial defense counsel duties. In August 1989 appellant submitted a lengthy request for clemency in which he complained about the failure of his defense counsel to "perform to his utmost to prove my innocence." On September 20, 1989, Captain Russell responded to the staff judge advocate's post-trial recommendation by requesting clemency and requesting a rehearing on findings, citing a number of alleged deficiencies in Captain Bartlemay's performance at trial. He also requested a rehearing on sentence. On October 2, 1989, the convening authority ordered a sentence rehearing. A rehearing was conducted on December 14–15, 1989. Captain Russell represented appellant at the rehearing, where the military judge advised appellant of his rights to counsel. He asked appellant, "Since you're here today with Captain Russell, am I correct in assuming that you wish to be represented by him?" Appellant responded, "Yes, sir." Captain Bartlemay's name was not mentioned by anyone.

On July 2, 1991, the Court of Military Review ordered a limited hearing in accordance with *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), to deter-mine whether appellant "consent[ed] to the withdrawal" of Captain Bartlemay; whether Captain Bartlemay "secure[d] his release from any appropriate judicial authority"; and if not, whether "there was any other good cause to sever the ... relationship" between appellant and Captain Bartlemay. 33 MJ at 538.

At the *DuBay* hearing appellant (then represented by Captain Wood only) testified that he felt somewhat "relieved" when Captain Bartlemay withdrew but that he did not agree with Captain Bartlemay's withdrawal. Appellant did not "ask" Captain Bartlemay "to continue as [his] counsel" because, in his words, "I wasn't aware that I could, Sir. Because he withdrew." Appellant testified that he would "have preferred Captain Bartlemay to remain on the case and" assist Captain Russell but was unaware that only he or a judge could release his defense counsel.

Captain Bartlemay testified at the *DuBay* hearing as follows:

Q. All right. The Appellant, Airman Acton said that he never contacted you again concerning your representation of him following this 21 July letter. Is that true?

A. There was one other contact that Sergeant Acton and I had in regard to the representation, Your Honor.

Q. When did that take place?

A. I'm not sure exactly when it did. It was after Captain Russell got involved in the case, and he was also present during this meeting. In fact, he was the one that asked for us to all get together, and in fact, Captain Russell was interested in having me on the case to assist him at that time. And, that was the purpose to see whether or not Sergeant Acton—then Sergeant Acton, and I apologize if I refer to him as such. But, Captain Russell wanted me to assist him in the case, and we all three, gathered in my office at Holloman. At that point in time, Sergeant Acton indicated he had no problem with my discussing the case with Captain Russell, and in giving him my understanding of the facts, but that he no

longer desired to have me represent him in the matter.

An affidavit from Captain Russell was received in evidence at the *DuBay* hearing, in which Captain Russell recited the following:

On 17 August 1991, I noted in my MFRs [Memos for the Record] that I had already asked SSgt Acton about whether Capt Bartlemay could continue to represent him as it would help me prepare, Capt Bartlemay's office was located locally, and it would not change my approach, including the raising of any issues then of concern to SSgt Acton. He asked me why I kept asking. He told me he had not done a written release because he doesn't like to put things in writing, but that he wanted Capt Bartlemay off the case, period. I told him that Capt Bartlemay's letter indicating withdrawal was insufficient to release Capt Bartlemay and he could still represent SSgt Acton, if SSgt Acton approved. Because of the nature of his complaints regarding his representation at trial, I told SSgt Acton he would have to put it in writing if he wanted Capt Bartlemay to remain on the case and that Capt Bartlemay might still have to be released if we raised significant issues of incompetency of counsel. SSgt Acton then again reiterated that he did not want Capt Bartlemay to represent him further, especially as he specifically wanted me to raise issues concerning the lack of representation by Capt Bartlemay.

\*　　　\*　　　\*

Every time the subject was raised, SSgt Acton made it clear that he had released Capt Bartlemay and did not want him involved further, with the very limited exception of briefing me one time on the court-martial. I have no doubt that SSgt Acton knowingly and properly released Capt Bartlemay from further representa-

tion, probably before, but at the latest on 17 August 1991.

Appellant testified that he had "no recollection" of the meeting among Captain Bartlemay, Captain Russell, and himself, but he conceded the possibility that it occurred and he didn't remember it.

The military judge conducting the *DuBay* hearing made findings of fact, including specific findings that appellant felt "relieved that Capt Bartlemay was withdrawing," that in August 1989 appellant "made it clear that Capt Russell could talk to Capt Bartlemay about the facts of the case, but he did not want Capt Bartlemay to represent him," and that in his clemency petition appellant "alleged that Capt Bartlemay's representation ... had been incompetent." The military judge concluded by finding: "The accused made it very clear to all concerned in both actions and words that he consented to the withdrawal of Capt Bartlemay on 21 Jul 89."

Upon review of the *DuBay* hearing, the Court of Military Review held, "The record amply supports the judge's conclusion. It is clear that even if initially appellant only acquiesced in the substitution, he ultimately welcomed it." Unpub. op. at 2.

### B.　*Discussion*

 Appellant contends that he is entitled to another sentence rehearing because his detailed defense counsel, Captain Bartlemay, improperly and unilaterally withdrew after the original trial. The Court of Military Review found that appellant consented to the withdrawal of Captain Bartlemay. Appellant contends that the Court of Military Review's decision is erroneous. We hold that Captain Bartlemay's purported unilateral withdrawal was improper but that, under the specific facts of this case, appellant was not prejudiced. Art. 59(a), UCMJ, 10 USC § 859(a).[2]

---

2. This case involves defense counsel's improper withdrawal from an attorney-client relationship but with assurance of his client's uninterrupted representation by another lawyer and followed by the client's subsequent knowing ratification of that withdrawal. Our willingness to test for prejudice under these circumstances is distinguishable from our reluctance to test for prejudice where an established attorney-client relationship is severed by some authority outside that relationship. *See United States v. Baca,* 27 MJ 110, 119 (CMA 1988).

Except for certain situations not applicable to appellant's case, "defense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown." RCM 506(c), Manual, *supra.* Captain Bartlemay's purported withdrawal as counsel on July 21, 1989, was clearly in violation of RCM 506(c). Whether Captain Bartlemay's failure to comply with RCM 506(c) also constituted an ethical violation is a question we leave to the appropriate military and bar authorities.

Our conclusion that Captain Bartlemay violated RCM 506(c) does not end the inquiry. While, as the Court of Military Review found, appellant merely acquiesced in Captain Bartlemay's purported withdrawal on July 21, 1989, appellant's acquiescence ripened into a total rejection of Captain Bartlemay as his counsel in August 1989. The testimony of Captain Bartlemay and Captain Russell's affidavit, both adduced at the *DuBay* hearing, establish that in August 1989, prior to the sentence rehearing, appellant told both Captain Bartlemay and Captain Russell that he wanted Captain Bartlemay to have nothing further to do with the case. Clearly, when appellant "fired" Captain Bartlemay in August 1989, he consented to his withdrawal as of that date.

Furthermore, after appellant attacked Captain Bartlemay's performance in his August 1989 clemency petition and Captain Russell attacked Captain Bartlemay's performance in his September 1989 request for a rehearing, the lawyer-client relationship was irreparably sundered, furnishing ample good cause for excusing Captain Bartlemay. *See United States v. Kelly,* 16 MJ 244, 247 (CMA 1983) (accused's request for different lawyer satisfied good-cause requirement). The problem, of course, is that no one made appellant's consent a matter of record or asked the military judge to excuse Captain Bartlemay. That the withdrawal was irregular is beyond cavil.

Turning to the question of prejudice, we find none. Appellant was represented by his counsel of choice at the sentence rehearing. Appellant did not want Captain Bartlemay to represent him, told him so, and attacked his competence during the post-trial review process. Appellant made it impossible for Captain Bartlemay to continue representing him; he cannot now complain about getting what he wanted: a new lawyer who would attack his old lawyer.

### III. *Decision*

The decision of the United States Air Force Court of Military Review on further review is affirmed.

Chief Judge SULLIVAN and Judges COX and WISS concur.

Judge CRAWFORD did not participate.

EVERETT, Senior Judge (concurring in part and dissenting in part):

In view of Acton's clearly expressed desire to replace his counsel, I agree with the majority opinion that Captain Bartlemay's withdrawal as counsel—even if not accomplished in a flawless manner—was legally effective and did not prejudice appellant's rights in any way.

I must part company from the majority, however, in its approval of the military judge's allowance of evidence about Acton's showering with his son and daughter. Of course, I accept fully the premise that it is unnecessary for evidence of other misconduct to fit into one of the categories mentioned in Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984. Those categories are simply illustrative. *United States v. Castillo,* 29 MJ 145, 150 (CMA 1989). Even so, to be admissible, the evidence must be offered for some purpose other than to show a criminal propensity on the accused's part; and also its probative value must exceed its prejudicial effect. *Cf.* Mil.R.Evid. 403.

The majority opinion makes various attempts to establish that the evidence of Acton's showering with his children and his exhibition to them of pornographic movies

featuring incest had some purpose other than to demonstrate that he was "predisposed" to commit similar offenses. *United States v. Castillo, supra* at 150. The majority suggests that this evidence showed "appellant's plan or scheme to condition his daughter to accept his sexual advances as permissible and normal." 38 MJ at 333. Then they add that this evidence "was relevant to prove appellant's intent to satisfy his sexual desires, because it refuted appellant's assertion in his confession that his intent was innocent and that he had no sexual interest in his daughter." *Id.* at 333. The military judge had concluded that the evidence should "be admitted to show a 'continuous course of conduct,'" as well as "to prove 'plan' and 'intent.'" 38 MJ at 331.

For me the stumbling block for acceptance of any such rationale results from the daughter's testimony—as a prosecution witness—that, on the evening of the alleged incident, Acton and the two children "had watched the video depicting incest" and then had taken "a shower together." Subsequently, Acton's "son asked appellant if they could sleep in appellant's bedroom where it was warmer." Later on, all "three slept in the same bed, with appellant in the middle." *Id.* at 332.

This testimony—which came from the Government's own witness and was uncontradicted—is totally at odds with the theory now being advanced that Acton lured his children into bed with him. The suggestion that they all be in bed together came from the son, lacked sexual overtones, and was quite reasonable. Nothing indicates that the son made his suggestion because of showering with his father or viewing the pornographic videotape.

Thus, this testimony negates the existence of a "continuous course of conduct"—on which the military judge relied. Likewise, it undermines the theory that Acton planned to seduce his daughter by showing her a videotape which depicted incest. She got into bed with appellant for an innocent reason suggested by her brother.

With respect to admissibility predicated on intent, the majority opinion leads us astray. Intent really was not at issue in this case. If appellant performed the acts of which he was accused by his daughter, no question would exist as to his intent. Heretofore this Court has suggested that both sides present their evidence on the merits before the judge decides whether intent is at issue and whether evidence of other misconduct could be admitted to establish intent. *United States v. Franklin*, 35 MJ 311, 317 (CMA 1992). The military judge here failed to exclude the evidence until its admissibility to prove intent was made clearer.

The majority opinion observes that, within the confession, Acton "admitted showering with his children and showing them pornographic videos, but he asserted that his sole motivation was educational and he disclaimed any sexual interest in his daughter." 38 MJ at 333. Here the majority seems to be concerned with Acton's intent in showering with the children and showing them the videos—rather than his intent when he was touching his daughter. Only the intent at the later time was material in deciding appellant's guilt or innocence; and, of course, if he did what his daughter described, there is no question as to his intent at that later time.

Perhaps my concerns would be allayed somewhat if the military judge had explicitly balanced probative value of the evidence against prejudicial effect. *See* Mil.R.Evid. 403. Contrary to this Court's repeated recommendation, however, the judge failed to perform this task. Therefore, I conclude that the evidence should have been excluded and the motion *in limine* granted.

As to prejudicial effect, I must concede that, in light of Acton's confession, it is likely that he would be convicted again even without the questioned evidence. However, this outcome is not so likely that affirmance is required now. *Cf. United States v. Mann*, 26 MJ 1, 5 (CMA) (Everett, C.J., concurring in part and dissenting in

part), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988). Therefore, I would reverse the decision below as to the charge of sexual assault and authorize a rehearing.