*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## David M. FINCH, Specialist
United States Army, Appellant

### No. 19-0298
Crim. App. No. 20170501

Argued December 4, 2019—Decided March 3, 2020

Military Judges: Jeffery R. Nance and Christopher E. Martin

For Appellant: *William E. Cassara,* Esq. (argued); *Captain Steven J. Dray* (on brief).

For Appellee: *Captain Brian Jones* (argued); *Colonel Steven Haight*, *Lieutenant Colonel Wayne H. Williams*, and *Major Craig Schapira* (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, SPARKS, and MAGGS, joined.

———————————

Judge OHLSON delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of violating a lawful general regulation for providing alcohol to a minor, one specification of sexual abuse of a child, and three specifications of rape of a child who had not attained the age of twelve years, in violation of Articles 92 and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920b (2012). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for six years, and a reduction to the grade of E-1. The United States Army Court of Criminal Appeals set aside the finding of guilty for the Article 92, UCMJ, offense, but affirmed the remaining findings of guilty for the Article 120b, UCMJ, offenses. *United States v. Finch*, 78 M.J. 781, 792 (A. Ct. Crim. App. 2019).

We granted review on the following issue:

> Whether the military judge erred in admitting over
> defense objection the video-recorded interview of AH
> by CID because it was not a prior consistent
> statement under Mil. R. Evid. 801(d)(1)(B).

*United States v. Finch*, 79 M.J. 220 (C.A.A.F. 2019) (order granting review).

Pursuant to the provisions of Military Rule of Evidence (M.R.E.) 801(d)(1)(B), we hold that only those *portions* of a witness's prior statement that are *consistent* with the witness's courtroom testimony may be deemed admissible at trial. We further hold that the prior consistent statement must serve one of the express purposes cited by M.R.E. 801(d)(1)(B): it must either rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or it must rehabilitate the declarant's credibility "when attacked on another ground." *Id.*

In the instant case, we conclude that the military judge erred in admitting the video-recorded interview of AH in its entirety. However, this error did not materially prejudice Appellant's substantial rights. Accordingly, we affirm the judgment of the lower court.

## I. Facts

### A. Background

Appellant is accused of sexually assaulting his eleven-year-old stepdaughter, AH, on two different occasions during the summer and fall of 2015 while Appellant was stationed at Fort Bragg, North Carolina. Prior to the sexual assaults, the two had a close relationship and often spent time together, to include various outdoor activities and frequent camping trips to nearby Mott Lake. However, AH later reported that Appellant had sexually assaulted and raped her during two of these camping trips.

On September 25, 2015, AH told her mother that Appellant had inappropriately touched her. AH's mother asked Appellant about the allegations, but she did not contact law enforcement. Approximately two weeks after AH disclosed the sexual assaults, AH's mother gave birth to Appellant's child. On March 11, 2016, AH ran away from home to her friend's house. The friend's mother asked AH why

she ran away, and AH disclosed the sexual assaults to her. The friend's mother promptly notified the police. On March 12, 2016, a special agent with the United States Army Criminal Investigation Command (CID) conducted an interview with AH about the sexual assaults and videotaped the interview. This case went to trial in September of 2017.

## B. Court-Martial Proceedings

The Government opened its case-in-chief with testimony from AH about the sexual assaults. After AH testified and was impeached during cross-examination, assistant trial counsel moved to admit Prosecution Exhibit 3, the videotaped interview of AH conducted by CID. A detailed comparison of the content of AH's testimony on the stand to the content of AH's account of events during the CID interview is essential to resolve the issue currently before this Court because in order for the videotaped interview to be admissible as a prior consistent statement under M.R.E. 801(d)(1)(B), it must in fact be "consistent" with AH's in-court testimony.

### 1. AH's In-Court Testimony

In regard to the first instance of sexual assault, AH testified that while lying in her sleeping bag in a tent at Mott Lake with Appellant next to her, she remembered waking up, still feeling half asleep, and realizing that Appellant was rubbing her vagina over her clothing. While at first AH thought it was a dream, she testified that she later realized it actually happened.

AH next testified about the second instance of sexual assault while she was in her sleeping bag in a tent at Mott Lake. In particular, AH recounted the following: Appellant draped his arm around her stomach, moved his hands to her vagina and rubbed it on top of her clothing, put his hands inside her underwear, inserted his finger into her vagina, subsequently removed his finger from her vagina and inserted it into her mouth, pulled her pants down, and inserted his penis into her vagina. AH stated that she was not sore from Appellant's penetration the next morning, and that it did not hurt to walk.

AH also testified that she made several disclosures to different peers and adults about the sexual assaults.

Specifically, she described first telling her friend AC, next telling her mother, telling some other friends to include BM, and then telling the school guidance counselor. Finally, AH explained that she ran away from home because she had "got[ten] sick" of trying to "block everything out."

### 2. AH's Account in Videotaped Interview

A CID special agent interviewed AH about the sexual assault allegations she made against Appellant. AH's in-court testimony in some ways closely tracked her account of events during the CID interview, but in other ways diverged from it.

AH began by describing the first instance of sexual assault. AH explained that she had just woken up and was still half asleep when she noticed Appellant rubbing her vagina over her clothing. In the moment, AH thought she was dreaming, but she later came to realize that the touching had actually happened. This description mirrors AH's in-court testimony.

Next, AH described the second instance of sexual assault. AH detailed the following: she was lying on her side facing the tent wall, Appellant was behind her and put his arm around her body, Appellant moved his hand down and started "petting" her vagina, Appellant pulled her pants down, Appellant inserted his finger into her vagina, and Appellant inserted his penis into her vagina. This description is also similar to AH's in-court testimony. However, during trial, AH described Appellant removing his fingers from her vagina and then placing them inside her mouth, and she did not include that detail during the CID interview.

Additionally, AH stated in the CID interview that she felt pain during and after the sexual assault, and gave details regarding the position of the sleeping bag in the tent and the fact that the zipper on the sleeping bag was broken. At trial, AH testified that she did not feel pain, and she did not mention the sleeping bag details at all.

Later in the interview, AH told CID that her mother was the first person she told about the sexual assaults. AH described next disclosing the information to her friend BM, and later to a school counselor. At trial, AH named all of these

people when discussing her disclosures, but she recalled telling them in a different order. Additionally, in the CID interview, AH explained that she had run away from home because her mother did nothing about the sexual assaults even though she was aware that they had happened.

Finally, AH told CID that after she disclosed the sexual assaults to her mother, her mother started requiring Appellant to stay away from their house when AH invited girlfriends over to spend the night. AH did not make any reference to these limitations during her testimony at trial.

### 3. Defense Theory of the Case

Throughout the court-martial, trial defense counsel broadly attacked AH's credibility as a victim and as a witness. The defense theory of the case was that the sexual assaults never occurred, AH made up the original story and then continued to fabricate new versions of the story to support her lie, and she did all of this to get attention from her friends and from her pregnant mother. As noted in greater detail below, trial defense counsel attacked AH's credibility by (1) impeaching AH during cross-examination, (2) introducing witnesses to testify that AH disclosed something different to them about the sexual assaults than what she testified to at trial, and (3) introducing character witnesses to testify to AH's bad character for truthfulness.

First, during the cross-examination of AH, trial defense counsel impeached AH based on inconsistencies between her prior statements and her trial testimony. Specifically, trial defense counsel pointed out that AH testified at trial about Appellant placing his fingers inside her mouth, but that AH failed to mention that in the CID interview. Additionally, trial defense counsel attempted to establish that AH had a motive to fabricate the sexual assaults based on her dislike of her mother and desire to live with someone else. The following exchange occurred:

[Trial Defense Counsel (TDC)]: Did you tell CID that your mom only cares about herself?

[AH]: Yeah.

[TDC]: And she only wants to live in a perfect, little world with her perfect, little child?

[AH]: Yes, ma'am.

[TDC]: That's a yes? And you don't want to live with her right now?

[Affirmative response by the witness.]

[TDC]: At the time you were talking with CID you didn't want to live with your parents?

[AH]: I still don't really want to now.

(Sixth set of brackets in original.)

Second, trial defense counsel continued to attack AH's credibility by questioning other witnesses about the version of the sexual assaults that AH shared with them, and highlighting aspects of those stories—omissions, inconsistencies, and timeline differences—that diverged from the version of the assaults AH testified about at trial. Third, trial defense counsel introduced AH's mother and grandfather as character witnesses who testified, respectively, that AH is "pretty dishonest" and is "a fabricating liar."

### 4. Admission of Videotaped Interview

During the Government's case-in-chief, assistant trial counsel moved to admit the videotaped CID interview of AH. Trial defense counsel objected to the admission of the videotape on the basis of relevance, hearsay, and cumulativeness. In response, assistant trial counsel argued:

> Your Honor, the defense throughout their cross-examination of the victim, [AH], has both attacked her credibility, the timeline, they've talked to other witnesses about the timeline itself. So given the fact that her credibility has been attacked, her memory has been attacked, potential motives to fabricate have been raised, the [G]overnment's position at this point is that the DVD interview that [CID] conducted with [AH], the victim in this case, qualifies as a prior consistent statement and would qualify for ground as entered—as an exhibit, Your Honor.

Upon learning that the prosecution's specific basis for admission of the videotape was as a prior consistent statement, trial defense counsel responded by arguing that it was mere repetition and failed to meet the admissibility requirements of a prior consistent statement.

The military judge conceded on the record, "I haven't seen the video obviously." However, he nevertheless overruled the defense objections, finding the videotape admissible under M.R.E. 801. In so doing, he explained why the video—a video he had not seen—was not cumulative, but he made no other findings of fact or law. He made no specific comments about why he concluded the videotape was admissible as non-hearsay under M.R.E. 801, nor did he specify under which subsection of M.R.E. 801 he believed the videotape to be admissible. Further, the military judge never came back on the record after watching the videotape to explain which aspects of it he would be considering for which evidentiary purposes. Later in the trial, the military judge simply noted, "And of course I'll give all evidence the weight it—that it deserves."

## II. Standard of Review

"This Court reviews a military judge's decision to admit evidence for an abuse of discretion." *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019) (internal quotation marks omitted) (quoting *United States v. Humphreys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

> A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.

*Id.* (internal quotation marks omitted) (quoting *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013)).

## III. Applicable Law

In 2016, the President amended M.R.E. 801(d). Exec. Order No. 13,730, 3 C.F.R. § 492 (2016). As amended, the relevant part of the rule states:

(d) *Statements that Are Not Hearsay*. A statement that meets the following conditions is not hearsay:

(1) *A Declarant-Witness' Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

. . . .

(B) is consistent with the declarant's testimony and is offered:

(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; . . . .

M.R.E. 801(d) (2016).

The proponent of evidence has the burden of demonstrating that the evidence is admissible. *United States v. Palmer*, 55 M.J. 205, 208 (C.A.A.F. 2001) (citing *United States v. Shover*, 45 M.J. 119, 122 (C.A.A.F. 1996)). Because the Government argued at trial that the videotaped interview was admissible under both subparts of M.R.E. 801(d)(1)(B), and because the military judge failed to state under which subpart he admitted the videotape, this opinion will address the amended rule in its entirety.

**A. Threshold Admissibility Requirements for M.R.E. 801(d)(1)(B)**

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. M.R.E. 801(c). Hearsay generally is not admissible in courts-martial. M.R.E. 802. However, a prior consistent statement made by a declarant-witness is not hearsay if certain criteria are met. M.R.E. 801(d)(1). Specifically, the plain language of the rule provides these three threshold admissibility requirements: (1) the declarant of the out-of-court statement must testify, (2) the declarant must be subject to cross-examination about the prior statement, and (3) the statement must be consistent with the declarant's testimony. M.R.E. 801(d)(1)(B); *see also Frost*, 79 M.J. at 109–10. In the instant case, both parties

agree that the first two requirements were met. The question remains, however, whether AH's videotaped statement to CID was sufficiently "consistent" with the declarant's in-court testimony.

The language of M.R.E. 801(d)(1)(B) is identical to the corresponding federal rule, and as such, the interpretation of the term "consistent" by other federal courts of appeals is instructive. *Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-61 (2016 ed.) [hereinafter Drafters' Analysis]. The United States Court of Appeals for the Third Circuit has held that "the rule allows the use of earlier statements that are *generally consistent* with the testimony at trial." *United States v. Muhammad*, 512 F. App'x 154, 166 (3d Cir. 2013) (internal quotation marks omitted) (citation omitted). Similarly, the United States Court of Appeals for the First Circuit has explained, "a prior consistent statement need not be identical in every detail to the declarant's . . . testimony at trial." *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988). Rather, the prior statement need only be "for the most part consistent" and in particular, be "consistent with respect to . . . fact[s] of central importance to the trial." *Id*.

### B. M.R.E. 801(d)(1)(B)(i)

For a prior statement to be admissible substantively as non-hearsay under M.R.E. 801(d)(1)(B)(i), it first must meet each of the threshold admissibility requirements outlined above, and it also must be offered "to rebut an express or implied charge that the declarant recently fabricated [the in-court testimony] or acted from a recent improper influence or motive in so testifying." M.R.E. 801(d)(1)(B)(i).

The 2016 amendment to M.R.E. 801(d)(1)(B) creates no new law with respect to the admissibility of prior consistent statements to rebut a charge of recent fabrication or improper influence or motive. *See* Drafters' Analysis at A22-61. What was previously admissible under M.R.E. 801(d)(1)(B) (2012) is now admissible under M.R.E. 801(d)(1)(B)(i) (2016). As such, this Court's long-standing line of precedents interpreting the old version of the rule, as recently discussed in *Frost*, 79 M.J. at 110, continue to apply with full force to the new version of M.R.E. 801(d)(1)(B)(i).

### C. M.R.E. 801(d)(1)(B)(ii)

The 2016 amendment to M.R.E. 801(d)(1)(B) added a second type of prior consistent statement that is now substantively admissible as non-hearsay. A determination of the proper parameters of this new provision, M.R.E. 801(d)(1)(B)(ii), presents an issue of first impression before this Court. However, an examination of the plain text of the rule, our own case law regarding common law admissibility, the Drafters' Analysis regarding the rule change, and precedent from other federal circuit courts of appeals interpreting the new rule allow us to discern several requirements for admissibility.

The plain text of M.R.E. 801(d)(1)(B)(ii) indicates that a prior consistent statement is admissible when it serves "to rehabilitate the declarant's credibility as a witness when attacked on another ground." The rule's mention of "another ground" refers to one *other* than the grounds listed in M.R.E. 801(d)(1)(B)(i): recent fabrication or an improper influence or motive in testifying. The rule itself does not specify what types of attacks a prior consistent statement under M.R.E. 801(d)(1)(B)(ii) is admissible to rebut, but the Drafters' Analysis lists "charges of inconsistency or faulty memory" as two examples. Drafters' Analysis at A22-61.

Preceding the 2016 change to M.R.E. 801(d)(1)(B) and the 2014 change to the sister rule in the Federal Rules of Evidence, prior consistent statements had long been admissible at common law for the limited purpose of rehabilitating a witness's credibility. *See, e.g., United States v. Coleman*, 72 M.J. 184, 188 (C.A.A.F. 2013) ("Even if the military judge would have refused to admit the prior consistent statement for the truth of the matter asserted, it still would have been admissible simply to corroborate, or rehabilitate, the in-court testimony of a witness." (internal quotation marks omitted) (citation omitted)); *United States v. Simonelli*, 237 F.3d 19 (1st Cir. 2001); *United States v. Ellis*, 121 F.3d 908, 919 (4th Cir. 1997). The effect of the rule change is to admit prior consistent statements for their value in rehabilitating a witness's credibility as has always been the practice, and now *also* as substantive evidence for the truth of the matter asserted. Drafters' Analysis at A22-61.

The Drafters' Analysis explains:

> The amendment does not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes. It does not allow impermissible bolstering of a witness. As before, prior consistent statements under the amendment may be brought before the factfinder *only if they properly rehabilitate a witness whose credibility has been attacked*. As before, to be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of Rule 403. As before, the trial court has ample discretion to exclude prior consistent statements that are cumulative accounts of an event. The amendment *does not make any consistent statement admissible that was not admissible previously*—the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well.

*Id.* (emphasis added). Thus, the permissible *uses* of admitted evidence have changed, but the *requirements* to admit that evidence have not. It is *not* the case that under M.R.E. 801(d)(1)(B)(ii), *all* prior consistent statements are now automatically admissible following impeachment on *any* ground. Rather, the military judge must make a determination that each prior consistent statement is relevant to rehabilitate the witness on one of the grounds cited in M.R.E. 801(d)(1).

The federal circuit courts that have applied Fed. R. Evid. 801(d)(1)(b)(ii) have done so by ascertaining the type of impeachment that has been attempted, and then evaluating whether the prior consistent statements offered for admission would actually rehabilitate the declarant's credibility as a witness. For example, the United States Court of Appeals for the Tenth Circuit recently held that because the opposing party "did not attempt to 'attack[] [the witness's credibility] on another ground'—that is, he did not extract inconsistent statements or accuse the victims of misremembering the alleged abuses—. . . admitting the [prior consistent] statements would not rehabilitate the declarant's credibility." *United States v. Magnan*, 756 F. App'x 807, 818 (10th Cir. 2018) (alterations in original). Similarly, the United States

Court of Appeals for the Sixth Circuit has held that where the prior consistent statements are offered in response to an "attack[] on another ground," and the prior consistent statements would function to rehabilitate the witness, the statements are admissible under Fed. R. Evid. 801(d)(1)(B)(ii). *United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017) (internal quotation marks omitted) (upholding the district court's admission of a child's prior consistent statement where the opposing party had attacked the child on the basis of a faulty memory); *United States v. J.A.S., Jr.*, 862 F.3d 543, 545 (6th Cir. 2017) (finding a prior consistent statement to be admissible where defense counsel sought to impeach the victim by prior inconsistent statement).

Thus, in sum, for a prior consistent statement to be admissible under M.R.E. 801(d)(1)(B)(ii), it must satisfy the following: (1) the declarant of the out-of-court statement must testify, (2) the declarant must be subject to cross-examination about the prior statement, (3) the statement must be consistent with the declarant's testimony, (4) the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in M.R.E. 801(d)(1)(B)(i), and (5) the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked. The proponent of the evidence bears the burden of articulating the relevancy link between the prior consistent statement and how it will rehabilitate the witness with respect to the particular type of impeachment that has occurred. *See Palmer*, 55 M.J. at 208.

## IV. Analysis

### A. Erroneous Admission of Videotaped Interview

As explained in greater detail below, in the instant case the military judge abused his discretion in admitting the entire videotaped interview of AH as a prior consistent statement under M.R.E. 801(d)(1)(B). This conclusion is predicated on the fact that (1) he failed to put any findings of fact or conclusions of law on the record, thereby forfeiting the deference his ruling typically would have been given, (2) he failed to review the video before admitting it, and (3) he admitted the *entire* video interview rather than limiting the

12

evidence to those portions of the interview that actually contained prior *consistent* statements.

### 1. Military Judge's Mishandling of the Issue

The military judge mishandled the issues surrounding the admissibility of the videotaped interview, and as such, his decision merits little deference. First, the military judge did not put any findings of fact or particularized conclusions of law on the record with respect to the hearsay objection.[1] Trial defense counsel objected to the videotaped interview on three grounds: relevance, hearsay, and cumulativeness. Aside from dismissing the cumulativeness objection, the military judge did not include in the record any analysis of why he concluded the videotape was admissible as non-hearsay under M.R.E. 801, nor did he specify under which subsection of M.R.E. 801 he believed the videotape to be admissible. He simply stated—without more—"I find it is admissible under M.R.E. 801." This Court has emphasized the importance and effect of a military judge making a clear record. *United States v. Flesher*, 73 M.J. 303, 311 (C.A.A.F. 2014). Specifically, "where the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted." *Id.* at 312. On the contrary, "[i]f the military judge fails to place his findings and analysis on the record, less deference will be accorded." *Id.* This Court has favorably quoted the United States Army Court of Criminal Appeals for the following proposition:

---

[1] We are not suggesting, of course, that military judges must provide reasons on the record for every ruling on the admissibility of evidence. We are mindful that during a court-martial, counsel may object during the examination of a witness, and the military judge may properly rule on these objections simply by stating "sustained" or "overruled." We do not seek to change this practice. However, where, as here, an evidentiary issue is complex and/or merits a written filing by a party, we deem it appropriate for a military judge to place on the record his or her reasoning behind the resolution of that issue. As we have noted, "it is difficult to defer to a decision when the record does not reflect what the basis of the decision was." *United States v. Acton*, 38 M.J. 330, 334 (C.M.A. 1993). It is all the more difficult when, as here, the record demonstrates that the military judge did not even review the evidence before ruling on its admissibility.

> When the standard of review is abuse of discretion, and we do not have the benefit of the military judge's analysis of the facts before him, we cannot grant the great deference we generally accord to a trial judge's factual findings because we have no factual findings to review. Nor do we have the benefit of the military judge's legal reasoning in determining whether he abused his discretion . . . .

*Id.* (internal quotation marks omitted) (quoting *United States v. Benton*, 54 M.J. 717, 725 (A. Ct. Crim. App. 2001)). On this basis alone, the military judge's decision to admit the videotaped interview warrants little deference.

Second, the military judge admitted this evidence without viewing it beforehand. Although we recognize this was a military judge-alone trial and the videotape was quite lengthy, the proper course of action was for the military judge to review the proffered evidence before making an admissibility determination. The military judge's failure to do so was compounded by the fact that he never came back on the record after he belatedly *did* view the admitted video to clarify which parts he was admitting, and for which purposes he would consider that evidence.[2] Instead, he made the perfunctory statement, "I'll give all evidence the weight it— that it deserves." In light of these circumstances, we decline to defer to the military judge's admissibility determination.

### 2. Admission of *Entire* Videotaped Interview

When a party moves to introduce a prior consistent statement under M.R.E. 801(d)(1)(B), the statement must be "generally consistent" with the declarant's testimony at trial to be admissible. *Muhammad*, 512 F. App'x at 166 (internal quotation marks omitted) (citation omitted). To the extent a prior statement contains substantive information inconsistent with the declarant's in-court testimony, those material inconsistent aspects of the statement are hearsay and are not admissible under M.R.E. 801(d)(1)(B). Thus, the

---

[2] Assistant trial counsel requested in the interest of time that the military judge publish and view the videotape during the military judge's deliberations, rather than publishing the video in open court at the time it was admitted. Trial defense counsel had no objection to this, and the military judge agreed to do so.

party moving to introduce a prior statement has a duty to identify those portions of the statement that are consistent with the witness's testimony, and then to demonstrate the relevancy link between the prior consistent statement and how it will rehabilitate the witness's credibility. *See* 1 Weinstein's Federal Evidence § 103.22 (2019) ("In addition to making a sufficient offer of proof, the proponent of evidence must convince the trial court that the evidence is actually admissible."). This mandate does not require counsel to remove every single inconsistency in a statement, since "a prior consistent statement need not be identical in every detail to the declarant's . . . testimony at trial." *Vest*, 842 F.2d at 1329.[3] Rather, the moving party must omit the inconsistent parts of the statement that pertain to "fact[s] of central importance to the trial." *Id.*

In the instant case, many portions of the videotaped interview were "generally consistent" with AH's in-court testimony. *Muhammad*, 512 F. App'x at 166 (internal quotation marks omitted) (citation omitted). Most of the discrepancies that did occur—such as the order in which AH told people about the sexual assaults; the operability of the zipper on the sleeping bag); and the position of AH's sleeping bag in the tent—were relatively inconsequential. As such, these particular incongruities between AH's in-court testimony and her videotaped interview did not render the videotaped interview so inconsistent as to fail the third prong of the threshold admissibility requirements of M.R.E. 801(d)(1)(B). The same cannot be said, however, of every portion of AH's CID interview.

We take particular note of a certain statement by AH on the videotape that, in the words of the defense on appeal, "tended to paint Appellant in an exceptionally bad light and lend credibility to the [sexual assault] allegation." Brief for Appellant at 25, *United States v. Finch*, No. 19-0298 (C.A.A.F.

---

[3] We also note that under the rule of completeness outlined in M.R.E. 106, a party may seek to admit additional portions of a prior statement on grounds of fairness. *See United States v. Rodriguez*, 56 M.J. 336, 339 (C.A.A.F. 2002) (explaining that the rule of completeness serves to prevent a court from being misled by statements taken out of context).

Sept. 9, 2019). Specifically, AH explained to CID that after she told her mother that Appellant had sexually assaulted her, AH's mother began to require Appellant to stay away from their home when AH invited her female friends to spend the night for a sleepover. This statement was not "consistent" with anything AH testified to at the court-martial, it tended to bolster AH's credibility, and it pertained to an issue "of central importance to the trial": whether AH's account of the sexual assaults was truthful. *Vest*, 842 F.2d at 1329. Thus the prior statement was flatly inadmissible under M.R.E. 801(d)(1)(B). Therefore, the question that remains is whether the erroneous admission of this statement was prejudicial to Appellant.

### B. Prejudice

When this Court finds that a military judge erred in allowing evidence to be admitted, the government bears the burden of demonstrating that the admission of that erroneous evidence was harmless. *Frost*, 79 M.J. at 111 (citing *Flesher*, 73 M.J. at 318). For preserved nonconstitutional evidentiary errors, the test for prejudice is "whether the error had a substantial influence on the findings." *Id.* (internal quotation marks omitted) (quoting *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019)). As reflected below, in conducting its prejudice analysis, this Court weighs: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (internal quotation marks omitted) (quoting *Kohlbek*, 78 M.J. at 334).

We first note that the Government's case was not especially strong. The Government was not able to produce any forensic evidence, physical evidence, or witnesses who had first-hand information about the sexual assaults independent of the disclosures which AH made to them. *See id.* at 111–12. Although uncorroborated testimony of a single victim may certainly be sufficient to prove an offense beyond a reasonable doubt, in the instant case AH's courtroom testimony was undermined by seemingly impartial—or even friendly—witnesses. For example, AH testified that she disclosed the sexual assaults to a school counselor. However, the school counselor testified that this never happened.

Further, AH's friends testified at trial about versions of the sexual assaults that AH had told them, and these versions differed significantly from what AH told the court-martial. For example, two witnesses testified that AH told them that at least one of the sexual assaults occurred in her bedroom at home—not in a tent at Mott Lake.

Second, the defense made significant inroads in advancing their theory of the case that AH fabricated the sexual assault story. Not only was defense counsel able to elicit inconsistencies in AH's testimony through cross-examination and numerous extrinsic witnesses, she also was able to call AH's credibility into question by introducing testimony about AH's bad character for truthfulness. Moreover, defense counsel put forward plausible theories during closing argument regarding potential motives for AH to lie about the sexual assaults, such as AH's desire for attention from her friends and mother, as well as AH's desire to have an excuse to run away to her boyfriend's house and live separately from her family.

Third, the materiality and quality of the improperly admitted evidence initially raise significant concerns. As noted above, AH stated on the videotape that after she told her mother that Appellant had sexually assaulted her, AH's mother began to require Appellant to stay away from the house when AH invited her female friends for a sleepover. The military judge, as the finder of fact in this case, reasonably could have drawn an inference from this statement that AH's mother found AH's allegation of sexual abuse by Appellant to be credible. This conclusion not only could have bolstered AH's credibility as the victim-witness, but it also could have undermined the sworn testimony of AH's mother at the court-martial that, in her personal assessment, AH had not "been truthful at all throughout her life" and was "always . . . pretty dishonest with me." As a consequence, this portion of AH's videotaped statement not only was inconsistent with her testimony at the court-martial, but it also pertained to "fact[s] of central importance to the trial." *Vest*, 842 F.2d at 1329.

In light of the relative weight of these factors, the improper admission of this portion of AH's videotaped statement presented the Government with a significant

burden in demonstrating that the military judge's error did not have a substantial influence on the findings in this case. However, for the reasons cited below, we conclude that the Government has met its burden.

First, AH's statement about the sleepovers constituted a mere passing reference in a very lengthy video. Second, the defense points to no instances in the course of the trial where the Government sought to exploit this portion of AH's videotaped statement, and we can find no such instance in the joint appendix submitted to this Court by the parties.

Third, AH's definitive statement at one point in the videotaped interview that Appellant was not permitted to stay in the family home whenever she had a sleepover was shown to be, at best, imprecise. Specifically, the following exchange occurred between the CID agent and AH:

> [CID AGENT]: I want to make sure I understood you right. Did you say mom makes [Appellant] go to another friend's house?
>
> A.H.: Like to another, like someone he knows.
>
> [CID AGENT]: Did she make him do that when you have girlfriends that stay the night?
>
> A.H.: (Affirmative head nod.)
>
> [CID AGENT]: Okay. Are there any times when your girlfriend[s] stay [the] night at your house and [Appellant] stays the [night] too?
>
> A.H.: No.

At an earlier point in the interview, however, AH stated that "mom *usually* ma[d]e [Appellant] go to a friend's house" when AH had sleepovers. (Emphasis added.) In fact, later in the interview, AH cited a specific instance when she had a friend, "B," at her house for a sleepover—after she had made the sexual assault allegations against Appellant—and AH's mother permitted Appellant to stay in the home overnight. Moreover, a different one of AH's friends, "AC," testified at the court-martial that she also had a sleepover at AH's house after AH had disclosed the sexual assault to her mother, and AC stated that Appellant remained in the home. As can be seen then, AH's seeming assertion at one point in the

videotaped interview that her mother had a strict policy of forbidding Appellant from staying in the family home once the mother learned of the sexual assault allegations was not accurate. Consequently, any negative inferences the military judge might have drawn from this assertion would, at the very least, have been greatly diluted. In fact, instead of prejudicing Appellant, this scenario just as easily may have caused the military judge, as the finder of fact, to view AH's videotaped statement—and, by extension, her courtroom testimony—with an increased degree of skepticism in regard to its overall precision and accuracy.

Fourth, and perhaps most importantly, independent evidence in the same vein as AH's statement about sleepovers in the videotaped interview was admitted at the court-martial *without defense objection.* Specifically, a report regarding a medical evaluation performed on AH at a "child abuse specialty clinic" stated, inter alia, that since the time that AH reported the sexual assault allegations to her mother, Appellant "has not been left alone with [AH]." The military judge could have drawn from this properly admitted report the same information and the same inference that he could have drawn from the improperly admitted video; namely, that after learning of the sexual assault allegations, AH's mother took steps to protect AH from Appellant because AH's mother found AH's allegations to be credible and she did not want Appellant to have another opportunity to sexually assault AH. For these reasons, we conclude that the military judge's error in admitting the entire videotape—which included the particular statement at issue—did not have "a substantial influence on the findings." *Frost*, 79 M.J. at 111 (internal quotation marks omitted) (quoting *Kohlbek*, 78 M.J. at 334). Therefore, it was not prejudicial.

## V. Conclusion

The military judge abused his discretion when he erroneously admitted into evidence inconsistent portions of AH's videotaped statement to CID. However, the Government has met its burden of demonstrating that this error was harmless.

19

## VI. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.